We've consolidated the first three cases for argument. It's 14-1509, 15-10, and 15-11, Board of Trustees v. Micron Technology. Mr. Summerfield and Mr. Cordell, I know early on in the process when we consolidated, I don't know whose great idea it was to give each side 30 minutes, but certainly having gone through the cases, we're not entirely clear that that amount of time is necessary given the limited issues in this case. This doesn't go to the importance of the issues, but just how complicated or how long they are. So feel free to take a much shorter time. I think we can accommodate the bench, Your Honor. Thank you. So the inventions of the three patents ensued involve the notion that when hydrogen is replaced with relatively heavy deuterium in the passivation of semiconductor devices, the bond strength of the interface of the device is increased to such an extent that the lifetime of the device can be enhanced up to 10 times. So can I just interrupt since we're trying to move this along? I was a little confused between blue and gray. And by gray, you seem to really focus down what the number of your issues are and your argument. And it seemed to me, so I want you to correct me if I'm misunderstanding, that your real argument is that in the prior art or whoever the reference is, Lysenker, Your Honor. Yeah, whatever they had, it was for before and after. And since you are just after, you mentioned something like it's a coin flip, something like that. So tell me if that's your main argument, and then maybe you can tease it out for me a little. It's virtually our argument, Your Honor. What we're saying is that Lysenker may, in passing, suggest to one of ordinary skill in the art the use of post-metallization passivation. So it's not even that it's a coin flip. The teachings of Lysenker are weighed very heavily in favor of pre-metal annealing or pre-metal passivation. So are you suggesting that, because let's be clear, that the PTAB aired and that there was not substantial evidence for their fact-finding that Lysenker discloses post-metallization annealing? No, what we're saying, Your Honor, is that because it's viewed in a light most favorable to Lysenker because it arguably teaches both. Most favorable to Lysenker? You mean most favorable to Micron or most favorable to PTAB? The Lysenker reference. Okay. The point is that what the PTAB found was that Lysenker teaches both pre- and post-metal annealing, and that's Micron's position as well. We're saying, well, even assuming that that's true, first of all… No, we're accepting that for purposes of argument on appeal. What we're saying is that the question becomes whether someone reading Lysenker would have necessarily selected post-metal annealing and therefore obtained the tenfold enhancement in device lifetime that's claimed in the patents. Okay, so on that point, whether someone would necessarily have taken the post, we agree it includes pre- and post. Correct. So what is your argument? We've got numerous cases which say, for purposes of an obviousness inquiry, we look at the possibilities, the options that you choose, and if it's an ascertainable number or something that's not astronomically high, like you would have experimented with 10,000 options. Now we have two. So if those two options are disclosed in Lysenker, and you agree that one only, and your argument is only one of them is relevant, how does that comport with our case law saying it wouldn't have been obvious to pick the second one? Because what we're suggesting, what we point to, Your Honor, is this Court's extensive case law regarding inherency, that when we're talking about inherency, which is what the Board found, it didn't say it would have been obvious to try these different things. It said it was inherent. And when we talk about the doctrine of inherency, what we are looking for is something that is necessary and invariable from practicing the prior art. And if the prior art says do one or the other, then by definition it's not necessary or invariable, especially with Lysenker's teachings. It's not necessarily, I'm sorry, I didn't catch your last word. Necessary and invariable. In other words, people practicing the prior art. Time out. I didn't think that was the inherency argument from the PTAB. I thought that their fact-finding on inherency, and please correct me, I may be wrong, was that when you use post-metallization annealing using deuterium, you get at least a tenfold increase in lifespan. I thought the inherency went to using deuterium automatically gets you this tenfold lifespan if you use it in a post-metallization annealing. It did, and that's the wrong test. Because again, when we're talking about inherency, we're talking about what happens when you practice the prior art. And we can't just cherry pick out of Lysenker whatever teachings there were. Why? If Lysenker gives, and I realize this is not the way Lysenker is written, but suppose that Lysenker gave two examples expressly. Post-metallization annealing was one example, and the second embodiment was pre-metallization annealing. And they say, without referencing the inherent tenfold increase that you would receive in the post-metallization annealing scenario, but they say you can replace hydrogen and deuterium for the hydrogen in either of these scenarios, and this invention will work. They never mention the tenfold increase, but I understand that you accept that that is an inherent result of post-metallization annealing using deuterium. The disclosure of two embodiments, why does the disclosure of one embodiment that's not relevant to your patent somehow render the second concrete and explicit disclosure, which is exactly relevant to your patent, not relevant to the inquiry? That might be the case, Your Honor, if Lysenker had said, and if you use post-metallization annealing, you will get more deuterium at the interface in this result. Why do they have to say that? I thought, this is why I asked you in the beginning, do you agree, because I don't see you disputing it, and in fact page one of your great brief says it, pretty much, that when you use deuterium in a post-metallization annealing process, it is inherent that the result will give you a tenfold increase in lifespan. What I don't see anywhere, here or before the PET tab, is some sort of argument like, well, if you do the annealing at only a certain temperature or only for a certain amount of time, you won't have a sufficient concentration of deuterium built up so that maybe you'll only get a sevenfold, like I don't see any sort of teasing out from a technological standpoint of some difference. That's right, Your Honor. In other words, we aren't saying that you have to vary other manufacturing parameters in order to get this result. If you do post-metal annealing, this is what the patents say, if you do post-metal annealing, it's a tenfold increase. The question, however, is how do you evaluate that within the teachings of Lysenker? We say it's analogous to this Court's line of cases that talk about the patentability of a species within a genus, where one discovers an unexpected result from a species. In other words, the genus can have been disclosed in the past, but if the species produces an unknown or unexpected result, that species may be independently patentable, and that's what we have here. The genus is the use of deuterium. You think that's true when the genus includes only two species? I mean, you know, it's kind of narrow, right? I mean, they don't talk about the unexpected result which you've admitted is inherent from the use, and only two examples will exist of species. I don't know. I'm feeling a little nervous about your analogy. But, Your Honor, this Court has never really set out a numerical limit where there has to be some minimum number of species within the genus before discovering the unexpected properties of a species make that species patentable, independent from the genus. Well, we've got two here, and what you say in gray is a person of ordinary skill in the art, reading Lysenker, would have been left whose own devices to determine whether to use pre or post. So you've got two choices. And given that post-metal annealing is required for the plain temporal process, the likelihood of obtaining the increase from the teachings of Lysenker is no better than coin flip. Do you think under our case law, if there's a disclosure of two options, and then you pick one of them and patent it, that doesn't lead you to obviousness when you've had a choice between two options and you picked one of them? Not by itself, Your Honor. There has to be some motivation to understand that one option is better than the other. I mean, otherwise, we are really talking about... Why do you need motivation? I mean, doesn't that, if you have a range, and isn't that just a matter of tinkering within the range? There's no logical leaps here. What's the requirement of motivation in these circumstances? Attempting to get an enhanced lifetime performance, Your Honor. One reading Lysenker would say, well, all I have to do is replace hydrogen with deuterium at some point during the fabrication process. As long as I do that, I am going to get enhanced device improvement because Lysenker doesn't even talk about that. Okay, so even if we're talking about motivation, so your motivation is to enhance the life, so you try two things. You try the kneeling before and the kneeling after, and you discover, according to your invention, that the kneeling after yields this tenfold increase in lifetime. But, Your Honor, where is the suggestion of that in Lysenker as opposed to what Judge Warren talked about, which is varying the temperature, the time, all the other manufacturing parameters that one could tinker with in order to come up with a better semiconductor device? There's nothing in Lysenker that says, tinker with when you add the deuterium. It could be myriad other things that one of ordinary skilled reading Lysenker could try to get at this enhanced lifetime performance. So there's nothing in Lysenker that says, if you want to try something to improve upon our teachings, tinker with when you add the deuterium. And that is the feature that these inventors discovered. The thing that you vary is adding the deuterium post-metallization. That was freshly disclosed in Lysenker. That's why I started, because, you know, I think Lysenker's a little fuzzy on that, but I didn't see you appeal, and I understand why. I mean, there are issues, but Lysenker, you are accepting the premise that Lysenker discloses two embodiments. Pre-metallization annealing and post-metallization annealing using deuterium. That's why we were going through all this in the beginning about pinning you down to know exactly where you were. So if that is the universe, there's no appeal that that fact-finding is not supported by substantial evidence, and that's the universe I have to accept on appeal, then, I mean, it's not a matter of somebody choosing. It's actually disclosed. Your Honor, it's not a question of just being two embodiments. As I mentioned before, the embodiments in Lysenker, as far as all the manufacturing parameters are concerned, are virtually limitless, because Lysenker doesn't just disclose adding deuterium. It talks about, again, it talks about a variety of process parameters, time, temperature, et cetera. So someone reading Lysenker wouldn't know inherently, well, if I want to improve on Lysenker, I am going to talk, I am going to look at when to add the deuterium as opposed to varying any of the other process parameters that one might vary. So Lysenker doesn't call out adding deuterium at particular times during the manufacturing process as something particular that one should be looking at if one's looking to improve on Lysenker's teachings. So back before the claim, before the applications for the patents and suit were filed, before anyone had the benefit of the claims as a blueprint, what would they have done reading Lysenker to try to improve on it? Well, the conclusion now in hindsight is, well, of course they would vary when you add the deuterium, because that's the thing that we're focused on. But without the benefit of the claims to know that, how would someone of ordinary skill in the art possibly know that that's the parameter to vary, especially when Lysenker says absolutely nothing whatsoever about whether there's a benefit to adding deuterium before, during, or after metallization. As a matter of fact, Lysenker's teachings, as we say in our brief, are agnostic in that regard. So what in Lysenker calls out that particular parameter is the thing to vary? Well, nothing. And so that is the inventive discovery that the inventors made. This is the thing we are going to look at. And what they discovered was if you add deuterium post-metallization, you avoid the high temperatures associated with the pre-metallization fabrication steps, and that's when you retain more deuterium at the interface, and that's what gets you the tenfold increase. Whereas other people may have been muddling around with things like, well, if we vary the temperature, what's going to happen? If we vary the length of time in which we subject these devices to different manufacturing steps, that might improve on it. They would have been looking around in the dark for a target that may or may not have existed. So the inventors discovered this. And yes, in this circumstance, we believe that this is an example of a species that is independently patentable from the genus, where the only thing the inventors varied was when you add the deuterium. Thank you. Ruffin Cordell on behalf of Micron. We certainly agree with the Court's analysis, particularly with respect to the inherency issue. The inherency issue doesn't lie with respect to whether or not Lysenko teaches post-metal annealing in the presence of deuterium. What about the last discussion your friend had about when we were talking about the number of options, So we look at Lysenko and we say, well, you can do it before or you can do it after. You just picked after. But he's saying there are countless variables that you could play with, given Lysenko, countless in terms of temperature or whatever, to get improvement or a longer lifetime. And why isn't that countless number of options, if we're playing with what was laid out for us in Lysenko, enough to avoid the obviousness? Because I disagree with the university's reading of Lysenko as A or B, pre or post. Instead, what Lysenko tells us is to do it at every stage in BLSI processing. That is the fundamental teaching of Lysenko. It tells us that over and over again. So your view is it tells us to do it before and it tells us to do it after, and after is there. Correct. Well, except those aren't the only two options, he says. I mean, there are all these potential variations in Lysenko in terms of temperature variation and all this other stuff. There are certainly other variables that could be managed, I suppose. But the fundamental teaching of Lysenko is to introduce deuterium at every stage in the BLSI processing. We see it in the record over and over again. But part of what they discovered, right, was that it works much, much, much more effectively if you do it after. And that's where you get the tenfold increase. So why isn't that enough of a discovery or an inventive taking away from, given what Lysenko meant? I think I'd have three responses to that. The first is that what King Pharma tells us is that you can't rely on an undisclosed inherency that you then later claim to a greater extent than what you have put into your patent. So in this case, the patents themselves say nothing in the specification as originally filed in 1996 about this post-metal annealing. It's completely absent. The original claim simply said passivating a semiconductor in the presence of deuterium. That was claim one filed originally. Two years later, over two years later, in April of 1998, they introduced claims for the first time introducing this post-metal anneal concept. That is nowhere in the specification. In column four of the specification— But the claims that they're relying on now, they've limited their universe. So we're just relying—they're just asserting the claims here that have this tenfold increase. They have. They have. But what King Pharma says precisely is that the prior art need only meet the inherently disclosed limitation to the extent the patented method does. The patented method, as disclosed, says nothing about the significance of post-metal annealing. It's completely absent. And in fact, it says just the opposite. In column four, it says you can do it before or after. And it says it over—it says it three separate times in the specification. It never attributes any significance whatsoever to the post-metal annealing. Yeah, but— Are you saying that the pen doesn't disclose a ten times limitation? It does disclose a ten times lifetime extension, but it does not ever associate that with post-metal annealing. They attempted to argue before the board this unexpected results argument that we heard counsel make here today. And the board said that's all well and good, but you haven't associated it with a particular embodiment in the patent because the patent is agnostic as to pre- or post-metal annealing. The patent itself doesn't tell you that the post-metal annealing is responsible for the ten times lifetime improvement, and therefore the board denied them any unexpected results. And that's the absolute fact that the university has to labor with is that its own patent doesn't support the distinction counsel is now trying to— Are you suggesting that the claim—I want to ask which one I'm looking at and what claim number this is. I guess it's claim two of the 533. Are you suggesting that this claim isn't limited to post-metal annealing? It's broader and includes both pre and post? No, I think it is limited to post-metal annealing. It says so pretty straightforwardly. So if the claim is limited to post-metal annealing and the claim recognizes a tenfold increase in the post-metal annealing process, I don't understand your argument. Your argument seems to me to be written description or enablement or something, but it doesn't really seem directly supportive of an obvious misdetermination. Well, it's King Pharma. So what King Pharma tells us is that if you are relying on an aspect of your claims that is only inherently disclosed, you can't be critical of the prior art for suffering from the same defect. In other words, the level of disclosure, it is very akin to a written description requirement. I found it very interesting. Yes, but this is not inherently disclosed in the claim. It's expressly disclosed in the claim. Well, that's true. It doesn't have us in the King Pharma universe. I understand the King Pharma case is based on the idea that if you didn't say it in your claim, the prior art doesn't have to say it. But here they did. They actually made it an express limitation. But recall that there is no dispute in this case that the express limitation, the post-metal annealing, is disclosed in Leisinger. So they conceded that, as Judge Moore, you pointed out at page one of the Gray Brief. They say it right up front that, in fact, Leisinger discloses both pre-metal annealing and post-metal annealing. So the question then shifts to whether the ten-time limitation is inherent, again, as you artfully articulated. Well, Leisinger doesn't disclose all the steps, right? I mean this is an obviousness, rejection. Leisinger is being used for use of deuterium in post-metal annealing, correct? That's right. It's not being used on all the elements. So the issues have shifted a bit. Before the board, that was absolutely true. The university took the position before the board that Leisinger failed to disclose post-metal annealing at all. And I think that's what drove it to an obviousness conclusion rather than anticipation. But a couple of things have happened since then. We have the admissions you've seen in the Gray Brief of two significant issues. Number one, that Leisinger does disclose post-metal annealing. And that when you have post-metal annealing, it is inherent that you have a ten-times lifetime improvement. Those two admissions, and they're reflected in other places in the record, I think have taken us, frankly, to a place where anticipation is appropriate here. But having said that, the obviousness case is compelling. Not only do we have Leisinger's teaching that deuterium is good, and in response to Judge Ramos' questions, the reference itself talks about strengthening the bonds. It talks about maximizing the deuterium at the critical part of the semiconductor, at the interface between the silicon substrate and the silicon dioxide overlay. And that maximizing the deuterium there strengthens the bonds and makes it resistant, more resilient, and more reliable, exactly the purpose for which the patents talk about the invention. And then beyond that, if for some reason you can't find it all in Leisinger, the obviousness case here is very, very compelling. We have references like Diehl and Guise and Wang that lay out the VLSI process in great detail, talk about the criticality of annealing post-metal in hydrogen, because it does exactly the same thing. It improves the reliability, reduces the bond stresses, all of the things that the patents claim. And then you add that with Leisinger's teaching that you are to replace hydrogen with deuterium at every step in the VLSI process, including the post-metal anneal. And the board found, and that's a fact-finding that's entitled to a substantial evidence standard of review, that in fact the motivation to combine was there. It's the only thing that the university has challenged with respect to this obviousness combination. Does Leisinger ever disclose post-metalization annealing? It talks about doing it all through the process. It never comes out and says, only do post-metal annealing. So if this were a case with a negative limitation, it would be a different story. Does it ever talk about pre-metalization annealing? Well, it does. It talks about it all through. You can see passages that talk about passivation, and that is typically done at a post-metal phase. Leisinger is generally a patent about pre-metalization annealing, and isn't it true that the only thing that you're relying on for its disclosure of post-metalization annealing is an errant sentence that says, VLSI fabrication flows employ deuterium-containing compounds in many or all of the fabrication steps that would normally employ hydrogen. And you're saying because of the sentence that says you can replace hydrogen with deuterium anywhere you would normally use hydrogen, that you're extrapolating from that that you could also therefore do it in post-metalization annealing, even though the patent never, ever talks about post-metalization annealing. Well, I've got a couple of responses. So there are more quotes. So at 491, for example, it talks about contacting a silicon wafer with deuterium or a deuterium-containing compound before, during, and or after formation of a device oxide. Which has nothing to do with annealing. You understand your semiconductor fabrication. That is not speaking about before or after. That is not pre- or post-metalization annealing. It talks about after. It has nothing to do with annealing. Well, after oxide formation. So at least we know that it's talking about it there. I'll move on then. That certainly is not a sentence. When you point to before, during, or after, you're not talking about the timing of the annealing, right? Well, I'm talking about the timing with respect to formation of the device oxide layer. That is not a disclosure, is it? I didn't see the PTAB holding that that amounted to a disclosure of post-metalization annealing. And I don't think it does technically. But, I mean, are you telling me that I should assume it does, or that you think it does, or are you arguing for me it does? I'm making the argument based on the disclosure in the specification. And it's useful for whatever purpose it's useful for. And I don't want to get… That was just very clear. Thank you. Go ahead. What else? What are the ones you got? Let me try another one then. To clarify, you made reference to a number of other cryo-arc references, and those other references were not before the board, right? They were before the board. They were before the board. There were different grounds upon which the rejections were made. And so, for example, in the 533, it was Leisinger in view of Diehl, I believe. For the 204, it was Leisinger in view of Geiss, and for the 387… The board didn't rely on them in order to make its decision. They did make obvious decisions, but you are correct. They primarily focused on Leisinger. That was the focus of the debate. If the board didn't rely on them, then we can't either. So there is a recent case that the court issued, I guess it's Henry Cuso, that suggested that, in fact, you can review the entirety of the record and affirm one of the grounds. But we haven't pursued that in the appeal. It hasn't been a significant issue. That is correct. Are you telling me you think I can affirm on a ground that wasn't addressed by the board on a question of obviousness by looking at references they didn't analyze and reaching conclusions about them? No, no. They did analyze them. Oh, so they did analyze them? I thought that they didn't actually say, you know, rejected this in light of this, this in light of this. I thought that it was all on Leisinger. No, they did. They went through combinations, several combinations. And I've keyed on those three, but there were many that they actually held on. If I can come back to Judge Ward, your question about whether or not Leisinger has a specific disclosure of a post-medal anneal, there is one, but it's complicated. And it has to do with the fact that Leisinger discloses the existence of deuterium at the interface between the silicon-silicon dioxide stack. And it's found at Appendix 495 and 496. And what it tells us there is that through the use of the invention disclosed in Leisinger, the disclosure of Leisinger, you find a significant increase in the concentration of deuterium at that interface. It goes from a 1 to 6,000 ratio to a 99 to 1 or 99 to 5, depending on which part of it you look at. That's over a 500,000 times increase in the concentration of deuterium at that interface. There is record evidence from the university that tells us that the only way, the only way to achieve that kind of concentration at the interface between the silicon and silicon dioxide layers is through a post-metal anneal. And we find that, we find that at, for example, the, so it's in Leisinger again at the, at 495, 25 through 496. That paragraph starts with, in general, electronic devices formed according to the above processes. But all of the above processes seem to be clearly pre-annealing, pre-metallization annealing processes. So, I don't know. Well, let me see if I can drive it home, Your Honor. So, what it tells us earlier is that you do annealing with deuterium all through the process, pre and post. We get to this example, the one example that's disclosed. No, it doesn't say pre and post. No, no, it doesn't say you do annealing all through the process, pre and post. We went over this. Leisinger never said you do annealing post, ever, anywhere. So, you're starting from the wrong premise. Well, let me, let me try it one more time. So, at 493, when it talks about the present invention can be implemented through the VLSI fabrication procedure, a typical fabrication procedure will include various doping, etching, annealing, deposition, cleaning, passivation, and oxidation steps. Those would include the post-metal annealing, particularly I key on the passivation term there. But the fact of the matter is there is some disclosure that it's done all the way through the process. So, I think we need to credit that. But then this example tells us. Well, you say it's done all the way through the process. But you wouldn't, I don't know, I don't know if I'm right about this. I'm just going to throw it out there. But I don't understand technically why you would pre-metalize anneal with deuterium and then post-metalize anneal. You're saying it as though there's necessarily always a post-metalization annealing step. And then you just use deuterium there. And I feel like it's actually, he's right that it's an either or at least. I mean, isn't it? I mean, I don't understand the technology to suggest there's always post-metalization annealing such that I would read this to require. No part of Weisinger tells you either or. It may be wasteful. It may be the kind of thing that you wouldn't want to do because you wouldn't want to waste deuterium. But it never says that. It says do it at every step that you use hydrogen. And this example, based on their experts' deposition testimony, shows that in fact it is a post-metal anneal, if I can offer you that. I can't imagine, because nobody has put into evidence how they could get these particular results at the top of 496 unless it was through a post-metalization annealing. He says the only way to do it is through a post-metal anneal. So if we go to 804, the question was, Dr. Wallace, do you agree that to achieve these high ratios of 99 to 1, for example, of deuterium to hydrogen, that at the interface and at the interface and in the silicon dioxide 99.5 or 99 to 1, do you agree that a post-fabrication anneal would be required to achieve such high concentration ratios? Yes. And then a follow-on question. Skipping down. When you said that retention of the deuterium at the interface necessarily requires the post-metal annealing, correct? Answer yes. You obviously know this record very well, which I appreciate. It's very helpful for me. But is that a basis upon which the PTAB expressly made a fact-finding that Lissinger discloses deuterium in a post-metalization annealing? I don't remember them discussing this example and saying, ah, we find this example in combination with their expert establishes that Lissinger actually disclosed post-metalization annealing. You are correct. It doesn't appear in their final written decision. What they did internally, we certainly don't know. But again, this Court is reviewing the decision ultimately, not the opinion that they wrote. And so to me, if we're searching for that example, this does give us that example, and Dr. Wallace's testimony was in fact discussed. If there are no further questions, I'll stop. Thank you. I see I have 17 minutes left for rebuttal. I don't think I'll be using all that time. The first thing I want to start with is Mr. Cordell's statement that Lissinger mandates the use of deuterium at every stage where hydrogen can be used, instead of making it optional is how I understood the contribution. If we go to page A12 of the Appendix to the 1509 Appeal, we see the four passages from Lissinger that the Board relied upon in talking about Lissinger's teachings regarding the replacement of hydrogen with deuterium. And we see that far from Mr. Cordell's characterization of a mandate, these passages make it very clear that it is the option of the user, or the person who's designing the parameters, as to when the steps will be used with deuterium as opposed to hydrogen. So the first quote, it talks about hydrogen can be replaced with deuterium. The second quote says that deuterium can be used in many or all of the fabrication steps. The third quote talks about using deuterium before, during, and or after formation of the device oxide layer. And the last step uses the disjunctive or throughout its quote. The point is that Lissinger doesn't mandate anything. It leaves it to the user to figure out what steps one can replace hydrogen with deuterium in. So if Mr. Cordell's argument hangs on the fact that Lissinger mandates the use of deuterium at every step, which I understand it to, then he is incorrect and there is no inherency here. And I really want to focus on the third quote here because this is important. This is the one that talks about the formation of the SID and SIOD bonds being accomplished in the present invention by contacting a silicon wafer with deuterium or a deuterium-containing compound before, during, and or after formation of a device oxide layer. If we go to the 533 patent to figure out what a device oxide layer is, and we can look at page A95. And this is again in the appeal. It's page A95 of the 1509 appeal. And we look at lines 10 through 17 of column 4. There, there's a clear distinction drawn between the field oxide layer, which is element 16, and the conductive contacts, which are the metal parts that we're talking about in pre- and post-metallization, which are elements 18 through 20. So, the patent clearly distinguishes between the oxide layer and the metal contacts. This third quote here, which is one of the things the board relied upon, is talking about before, during, and or after formation of a device oxide layer. All of those are pre-metallization steps. So, the point is, Lysenker doesn't talk about, it doesn't say, do this post-metallization. It says, do it any time you feel like it, but what we're really talking about here is pre-metal annealing. Now, Mr. Cordell talked about these ratios that are disclosed in Lysenker, and the only way to get them is post-metal annealing. Well, the point is, whether those ratios are accomplished some of the time or not is irrelevant to an inherency determination. They have to be accomplished all of the time, and when we look at the other evidence in the record, and this is specifically at Micron's own brief at page 16 of the 1509 appeal, their own expert talks about measuring the results of Lysenker. These results actually don't appear in Lysenker. He conducted tests that were supposed to replicate Lysenker, and he found results varying from 3.9 to 35 times. Those results don't support an inherency finding. As a matter of fact, it's just the contrary. When you have that diverse a range, no one can say with a straight face that these results are inherent. I don't understand. You didn't appeal inherency. You have accepted that post-metallization annealing creates at least a tenfold increase in lifetime when you use deuterium. So, I don't understand your last point. The point is, Your Honor, that someone practicing Lysenker might get 3.9 times increase. They might get 35 times. 3.9 is not tenfold. So, their own evidence says that depending on what you do with Lysenker, you may get the tenfold increase, you may not, and the point is Lysenker doesn't tell you how to get the tenfold increase as opposed to the 3.9 fold increase or some other increase below tenfold. It's left to the imagination of the reader. Is that consistent with the statement you made from page one of your three-point brief, where it seems to me you're making a concession as to the post-metal passivation step and what happens at that point? Well, page one, we say if you do post-metal annealing, you will get the tenfold increase. The if is the problematic issue here. There's nothing in Lysenker that says do this specifically and if you want to get the tenfold increase, don't worry about temperature, don't worry about time, don't worry about the things you use for the other steps in the fabrication process. Just add deuterium any time you feel like it. That's what Lysenker says. That's not the discovery of the patents in suit. The patents in suit say do it post-metalization. That's how you get the result. And that's the distinction between the prior art and the patents in suit. The last issue I want to address, your honors, is Mr. Cordell's point that the patent itself doesn't talk about, doesn't tie the tenfold increase to post-metal annealing. In fact, if we look at A95 again, column four, line 16, it's describing device 11 of figure 1, which is the main depiction of the invention in this patent. It's described as already including conductive contacts. In other words, that device has already gone through the metalization steps. So the device that is being subjected to deuterium annealing in this example would be post-metalization. Then we have in column seven of the same patent, lines four through five, the wafers used in the examples of the patents are described as containing NMOS transistor structures. Again, those wafers have already been metalized. So the annealing to which these devices are subjected is post-metal. So the patent very clearly uses examples where the annealing is all done post-metalization. Is there any way to do the post-metal annealing and not get the 10x result? No, your honor. We agree that if that is what the person decides to do, you will get that result. You will necessarily get that result. Yes, but the question again is why would someone reading Lysenker choose to do that as opposed to the myriad other things they might do using Lysenker's teachings or some variation thereof. And finally, with regard to the prosecution history of the Patents Institute, which we can look at to talk about what this invention is all about, Micron itself quotes this passage from the prosecution history on page 12 of its 1509 red brief. The university's prosecution expert clearly tied an order of magnitude improvement in device lifetime performance, at least 10x, to a post-metalization anneal and deuterium semiconductor device fabrication step. So Micron itself calls out the part of the prosecution history where the result is tied specifically to post-metalization. We think that's sufficient enough, your honors, to indicate that you need post-metalization to get this 10x improvement and simply taking a shot at Lysenker using some iteration of Lysenker without the benefit of the claims would not have resulted in this improvement inherently. Thank you. Thank you. We thank all counsel when the case is submitted.